| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | | |
|---|---|---|
| Ernest and Mattie Harris | § § | |
| Plaintiffs, | § § | Civil Action H-08-1243 |
| *versus* | § § | Bankruptcy 03-44826 |
| Fidelity National Information Services, Inc. | § § § | Adversary 08-3014 |
| Defendant. | § § § | |

**Harrises' Brief Regarding Fee-Splitting in Bankruptcy Court**

The Harrises file this brief as directed in the April 29, 2008 status conference.

## Summary

The Harrises ask this Court to disgorge the fees that they paid to Saxon for attorneys' fees that Saxon's attorneys, Mann & Stevens, paid to Fidelity. Mann & Stevens has a written agreement (the Network Agreement) to pay Fidelity 25% to 50% of the attorneys' fees Saxon pays Mann & Stevens for major filings such as objections to plans and motions for relief from stay. Compl., Ex. 1, at Saxon 0191 ("By accepting Referrals, the Firm agrees to the terms of this Agreement. . . ."); *id.* at 0201 (Mann & Stevens's payment obligations to Fidelity, based on attorney billing tasks, not by volume of service provided).

As a rule, courts condemn fee-splitting between lawyers and nonlawyers – particularly fee-splitting that, like Fidelity's, is not disclosed to the bankruptcy court. Courts routinely award disgorgement to the debtor or debtor's estate because the fees come from the debtor's estate. In some instances, courts have ordered disgorgement of not only the portion of the fees shared with nonlawyers, but all fees paid to lawyers party

1

to the fee-sharing agreement. In extreme instances, a party engaging in fee-splitting in a bankruptcy may become criminally liable, but prosecutions appear rare.

The courts' reasoning for disgorging fees obtained through fee-splitting agreements reflects that (1) the disclosure rules of the Bankruptcy Code regarding sharing of fees incorporate the ethical rules against fee-splitting and solicitation; (2) the bankruptcy courts have full power to police estates of bankrupt debtors against deceptive practices of entities seeking to obtain estate property; and (3) the obnoxiousness of fee-splitting warrants disgorgement of fees, regardless of any showing of actual harm to the estate.

Those consideration apply here. The Harrises suffered harm to their estate as a result of Fidelity's fee-splitting with Mann & Stevens, making this an easy case for disgorgement. As Judge Bohm observed, it is the debtors that ultimately pay. *See* Tr., Bankr. Dkt. 46-11, at 11 ("When the music stops and everyone's grabbing their chair, it's the Debtors that are left standing holding the bag making the payment. . . . [To argue otherwise would be to argue] that you can get away with money laundering. You can move it from shell, to shell, and say no one's liable, even though it's coming out of the Debtor's pocket . . . .").

### Factual Allegations Relevant to Fee-Splitting

**A. Mann & Stevens pays "Administrative Fees" for referrals**. Fidelity refers clients like Saxon to Mann & Stevens as at least part of the consideration that Mann & Stevens pays Fidelity its "Admin Fees." Compl. Ex. 1, at Saxon 0191 ("By accepting Referrals, [Mann & Stevens] agrees to the terms of this Agreement"); *id.* at 0198 (schedule of "Admin Fees" payable by Mann & Stevens to Fidelity). Ordinary law-firm vendors or landlords do not refer legal work to their law-firm customers in

exchange for an "Admin Fee." Contrary to Fidelity's assertion to this Court that the law firms are selected by Fidelity's clients (Dkt. 12, Ex. A), the Network Agreement states that "Fidelity may decide which default matters are to be referred to [Mann & Stevens]." *Id.* at Saxon 0191.

**B.  Mann & Stevens's payments to Fidelity are defined in proportion to its attorney's fees received from Fidelity's referral and charged to debtors under the deed of trust in every mortgage**. In exchange for Fidelity's services (most notably, referral of clients) Mann & Stevens pays Fidelity a proportion of the attorney's fees Mann & Stevens charges Saxon. *See* Network Agreement, Compl. Ex. 1, at Saxon 0198. Under the deed of trust in every mortgage, Saxon in turn collects those fees from debtors like the Harrises. *Cf.* Trans, 4/1/08, Bankr. Dkt. 46-11, at 12 (Judge Bohm's bench ruling) ("The 600 bucks was paid with post-petition earnings. And that's property of the estate. And the fact that Fidelity's $150 portion . . . first passes through . . . Mann & Stevens, in my mind, shouldn't eliminate its status as property of the estate . . . ."). By basing its fee on the attorney's fee schedule, Fidelity computes its fees in a way unlike ordinary law firm vendors, which charge by the page, by the kilobyte, or by the month.

**C.  Fidelity controls Mann & Stevens**. Fidelity controls Mann & Stevens even though Mann & Stevens purports to represent Saxon in bankruptcy court. Fidelity retains and manages Mann & Stevens. *See* Network Agreement, at Exh. A, Saxon 0198 ("The Firm shall provide Fidelity and its clients with competent legal representation . . . ."); Default Servs. Agmt., Bankr. Dkt. 34-2, at Saxon 0038 ("Fidelity shall manage Local Counsel."). Fidelity's control over Mann & Stevens distinguishes Fidelity from ordinary law firms vendors or law firm landlords.

## **Discussion**

### A.     Governing law.

Bankruptcy courts police against fee-sharing agreements by enforcing direct prohibitions under the Bankruptcy Code, such as 11 U.S.C. § 504(a), rules requiring disclosure prior to approval of fees, such as Rule 2016 of the Federal Rules of Bankruptcy Procedure, and state ethics requirements that courts consider in applying the bankruptcy rules.  Bankruptcy Rule 2016 provides:

> (a) **Application for compensation or reimbursement.**
>
> *An entity seeking interim or final compensation for services*, or reimbursement of necessary expenses, from the estate shall file an application . . . .  An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, *whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received* for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant *even though the application is filed by a creditor or other entity*. . . . [Emphasis added.]
>
> (b) **Disclosure of compensation paid or promised to attorney for debtor.**
>
> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States Trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code *including whether the attorney has shared or agreed to share the compensation with any other entity*. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. . . .  [Emphasis added.]

4

As discussed in detail below, courts enforcing Rule 2016 and related disclosure provisions routinely disgorge fees without hesitation under their inherent authority or under 11 U.S.C. § 105 (empowering federal courts hearing bankruptcy cases with authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]").

The governing ethics rules in Texas come from the ABA's Model Rules of Professional Conduct and have applied uniformly under prior law.  For example, Texas Disciplinary Rule 5.04(a) provides that "[a] lawyer . . . shall not share or promise to share legal fees with a nonlawyer," with exceptions inapplicable here.  Likewise, Rule 5.04(c) provides that "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."  Similarly, Rule 7.03(b) states that "[a] lawyer shall not pay, give, or offer to pay or give anything of value to a person not licensed to practice law for soliciting prospective clients for, or referring clients or prospective clients to, any lawyer or firm . . . ."  Rule 7.03(d) states that "[a] lawyer shall not enter into an agreement for, charge for, or collect a fee for professional employment obtained in violation of Rule 7.03[(b) or (c)]."

As discussed in detail below, courts applying Rule 2016 consider the provisions of that rule in the context of these long-standing ethics rules.

**B.     Complete disgorgement of all fees from both lawyer and nonlawyer is a common remedy for undisclosed fee-splitting.**

The cases that bear the closest resemblance to the Harrises' claims against Fidelity involve fee-splitting arrangements in cases of debtor-side counseling and

5

referral services.  *See, e.g., In re Zuniga*, 332 B.R. 760 (Bankr. S.D. Tex. 2005) (Bohm, J.); *In re Soulisak*, 227 B.R. 77 (Bankr. E.D. Va. 1998).

*Soulisak* provides a typical example in which the court ordered total disgorgement of all fees that a debtor's lawyer charged.  *Soulisak* involved a debtor counseling service combined with a debtor's law firm.  The combined operation would charge each debtor a total of $650; of that, $400 went to the lawyer, and $150 went to the counseling service as "paralegal" fees.  The fee sharing apparently was not disclosed to the court.  After the U.S. Trustee intervened, the court ruled that the combined operation constituted improper fee sharing under both the Virginia Disciplinary Rules (including the rule against sharing legal fees, DR 3-102, comparable to Rule 5.04(a) of the Texas Disciplinary Rules) and the Bankruptcy Code provision against debtor sharing of compensation, 11 U.S.C. § 504(a).  The court found "the unethical conduct [of the lawyer and the credit counselor] to be so egregious as to make any collection of fees unreasonable."  *Id.* at 83; *cf. Zuniga*, 332 B.R. at 773 ("failure to disclose the fees [received in a 2016(b) statement] constitutes a fraud on this court.") (citations and quotations omitted).

As with some of the other fee-splitting/referral-fee cases, the percentage of the fee-splitting in the *Soulisak* agreement amounted to about a one-third/two-thirds split—just like Fidelity's split with Mann & Stevens for the high-volume creditor pleadings objecting to plans and moving for relief from the automatic stay.  Further, although the *Soulisak* court made no finding of a referral arrangement, the facts suggest that the debtor counseling service operated as a solicitation and referral service for the law firm. *See generally* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 10 cmt. d (observing that the prohibition against fee-splitting is often applied to "schemes for

compensating a nonlawyer for referring clients"); *cf.* TEX. PENAL CODE § 32.12(a) (imposing criminal liability for barratry, defined as "pay[ing], giv[ing], or advanc[ing] . . . anything of value to obtain employment as a professional from the prospective client").

### C. Total disgorgement of all fees has been ordered even when the referrer is a lawyer.

The circuit courts of appeals have imposed particularly harsh sanctions for fee-splitting, often reversing bankruptcy courts that failed to impose total disgorgement. *See, e.g., In re Futuronics*, 655 F.2d 463, 470 (2d Cir. 1981); *see In re Evangeline Refining Co.*, 890 F.2d 1312, 1323-24 & n.8 (5th Cir. 1989) (following *Futuronics*).

In *Futuronics*, the Second Circuit held that a bankruptcy court abused its discretion in refusing to disgorge all fees paid to a law firm that kicked back roughly a third of its fee to a referring lawyer without disclosure. In *Futuronics*, debtors' lead counsel retained special counsel to handle government contracts issues. *Id.* at 466. The special counsel secretly paid a third of its initial fee back to debtors' lead counsel. The bankruptcy found that this arrangement constituted "a flagrant disregard of the Bankruptcy Rules" and "evince[d] a total pattern of conduct which betrays a callous disregard of the professional obligations undertaken in a bankruptcy proceeding." *Id.* at 468 (citations and quotations omitted). The bankruptcy court ordered the lead debtors' counsel to disgorge the entire referral fee, but allowed the special counsel to keep substantially all of its fee.

The Second Circuit (and the district court before it) concluded that the bankruptcy court abused its discretion by failing to require a "total denial of compensation to the misfeasors." *See id.* at 471. The Second Circuit observed that "fee-splitting arrangements have long been acknowledged as anathematic enterprises

7

because of their natural tendency to cause an attorney to inflate his fees in order to offset the diminution in compensation caused by the agreement." *Id.* at 470 (citing, among other cases, *Weil v. Neary*, 278 U.S. 160 (1929)).  Furthermore, the court noted, fee-splitting arrangements "also subject the officer or attorney sharing fees to *outside influences* and may result in a *transfer of control* to persons who, at best, have a *distinctly lesser degree of public responsibilities*." *Id.* at 470 (citing 12 Collier ¶ 219.07, at 2-220) (emphases added).  The court pointed out that the Bankruptcy Rules were amended specifically to "comport[]" with the rules against fee-splitting in the Code of Professional Responsibility.  *Id.* at 469 n.12 (citing Advisory Committee Note to Rule 219; 12 Collier ¶¶ 219.01 to 219.03).

Fidelity defends its policy as a cost-saving device.  The *Futuronics* court rejected that argument.  The Second Circuit concluded that it is no excuse to claim that the fee-splitting agreement "was a great success" with "none of the evils that might be attributable to fee sharing." *Id.* at 471.  Quoting Collier, the court explained that "such agreements are not less reprehensible because in a particular case they may not have resulted in any clearly discernible harm to the estate or its creditors.  It is the *potential* danger alone that makes them obnoxious." *Id.*

This is the rule in the Fifth Circuit and elsewhere.  *See In re Evangeline Refining Co.*, 890 F.2d at 1323-24 & n.8 ("We have warned counsel not to venture into any possible abuses of compensation. . . .  Because fraud on the court and estate is misconduct of the highest order, courts have denied all compensation despite benefits to the estate.  Such conduct is a violation of ethical obligations as well.  Disciplinary Rule 1-102 (A)(4) states that misconduct occurs where counsel engages in conduct involving dishonest, fraud, deceit, or misrepresentation.") (quotations omitted); *see also In re*

8

*West Delta Oil Co*, 432 F.3d 347, 358 n.32 (5th Cir. 2005) (concluding that bankruptcy court abused its discretion in awarding fees to special counsel who represented debtor and entity adverse to debtor without disclosure of the conflict because "[i]t is irrelevant that no evidence exists pointing to actual prejudice to the estate"); *In re Kisseberth*, 273 F.3d 714, 720-21 (6th Cir. 2001) (failure to disclose warrants disclosure of all fees, "regardless of the degree to which [counsel's] fees were excessive"); *In re Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (bankruptcy counsel that fails to disclose connections to debtor, creditor, or any other party proceed at their own risk because failure to disclose is sufficient grounds to deny compensation); *In re Park-Helena Corp.*, 63 F.3d 877, 881 (9th Cir. 1995) (observing that even a negligent or inadvertent failure to fully disclose may result in a denial of all requested compensation).

> **D.     Under some circumstances, disgorgement of only the shared portion of the fee has been ordered.**

In another case with facts similar to those the Harrises allege here, the court emphasized the shared scope of Rule 2016 and the ethical prohibition against fee-splitting in disgorging from a debtor's lawyer fees split with his staff. *See In re Holmes*, 304 B.R. 292, 295-96 (Bankr. N.D. Miss. 2004).

In *Holmes*, the debtor's lawyer paid non-attorney staff members $5.00 "incentive bonuses" each time his staff obtained at least $300 and a retainer agreement, completed and returned bankruptcy questionnaires, or signed living wills/durable powers of attorney. Judge Houston applied Rule 2016(b) and Rule 5.4(a) of the Mississippi Disciplinary Rules, finding their prohibitions essentially the same, and concluded that "[t]he failure to disclose the sharing of fees with non-attorney staff members merits disgorgement." *Id.* at 297. Judge Houston ordered an accounting of all bonuses that he

9

paid his staff and indicated that the court would "thereafter . . . direct appropriate relief." *Id.* at 298.

Most noteworthy, Judge Houston concluded that the violation of Disciplinary Rule 5.4(a) occurred precisely because "[t]he $5.00 bonus arrangement was utilized by [debtor's counsel] *on a per-event basis, primarily to stimulate the event.*" *Id.* (emphasis added). The court rejected the lawyer's argument that he paid the bonuses as part of his staff's salaries because under the per-event model, the payments were not just overhead. Instead, the court found, "it is a payment to motivate and encourage specific events." *Id.* at 297-98. The court concluded that "[t]he arrangement conveys a pecuniary interest to the non-lawyer employee that is directly dependent on the decision that the client is called upon to make," in violation of § 504(a) of the Bankruptcy Code, Rule 2016(b), and Disciplinary Rule 5.4(a). *Id.* at 298.

The court found no distinction between the prohibition against fee-splitting in the ethical rules and the prohibition against fee-splitting in the Bankruptcy Code and Rules. Considering a number of non-bankruptcy ethics cases from across the country, Judge Houston concluded that "[e]ach of the aforementioned cases stands for the proposition that fee-splitting arrangements with non-lawyers are *contrary to public policy and generally not allowable.*" *Id.* at 297 (citing *In the Matter of Hear*, 755 N.E.2d 579 (Ind. 2001); *Ungar v. Matarazzo Blumberg & Assoc.*, 260 A.D.2d 485, 688 N.Y.S.2d 588 (N.Y. 1999); *Trotter v. Nelson*, 684 N.E.2d 1150 (Ind. 1997); *In the Matter of Anonymous Member of the South Carolina Bar*, 367 S.E.2d 17 (S.C. 1988)).

The scheme in *Holmes* is functionally indistinguishable from that of Mann & Stevens and Fidelity. Mann & Stevens pays an "administrative fee" to Fidelity on referred matters on a "per-event basis." For example, in connection with the objection it

filed to the Harrises' plan, Mann & Stevens paid Fidelity $50 out of a fee charged to Saxon (and ultimately the Harrises) of $200; for the motion it filed for relief from the automatic stay, Mann & Stevens paid $150 out of a fee charged to Saxon (and ultimately the Harrises) of $650. These payments to Fidelity serve primarily to stimulate the referrals Fidelity makes to Mann & Stevens, as the Network Agreement demonstrates. *See* Compl. Ex. 1 at Saxon 0191, 0198 (noting that among other services Fidelity provides to Mann & Stevens is "develop[ing] and implement[ing] marketing services to obtain clients for the Network [of attorneys, including Mann & Stevens]"). Fidelity's argument that Mann & Stevens must pay regardless of whether Saxon pays elevates form over substance. Saxon paid Fidelity here, and Fidelity never suggests that Mann & Stevens has suffered a meaningful shortfall of revenue because of nonpayment by Saxon or other Fidelity clients.

### E. In one instance, fee sharing with a paraprofessional was approved because the debtor's counsel disclosed it before obtaining the fee

The only case that the Harrises have located that involves an approval of a fee-sharing with a nonlawyer was one in which the fee-sharing was disclosed to the court before the fees were collected. In *In re Van Dyke*, 296 B.R. 591, 596 (Bankr. D. Mass. 2003), the court awarded compensation to a paralegal who operated independent of the debtor's lawyer and therefore made a separate application for compensation. The court based its ruling on the detailed time records submitted by the debtor's lawyer and concluded that under the record that no unethical fee-splitting occurred.

The difference between a case like *Van Dyke* and this one is disclosure. As the court observed in *In re Mayeaux*, 269 B.R. 614, 621-22 (Bankr. E.D. Tex. 1999), "[w]hen an attorney unilaterally elects to conceal the existence of payments that might otherwise

11

be subjected to examination by creditors and the court, the entire compensation review process is derailed and public confidence in the system is damaged."

### F. The courts' preferred mechanism for enforcement of Rule 2016(a) has been through disgorgement orders entered under their inherent authority or under 11 U.S.C. § 105(a).

The bankruptcy courts police violations of Rule 2016(a) through orders of disgorgement under the courts' inherent authority or under 11 U.S.C. § 105(a). In many of the court of appeals decisions, for example, the courts disgorge fees (or reverse fee awards) without citation to § 105(a). *See, e.g., In re Delta Oil*, 432 F.3d at 358 & n.32; *In re Evangeline*, 890 F.2d at 1323-24 & n.8.

In other instances, the courts observe that if an entity seeking compensation from the estate fails to comply with Rule 2016(a), "it is well within the Court's authority under § 105 to rectify that error." *See In re Sanchez*, 372 B.R. 289, 311-12 (Bankr. S.D. Tex. 2007). As Bankruptcy Judge Isgur has observed:

> Ordering disgorgement of Reimuburseable Expenses collected in violation of Rule 2016(a) and [the debtors'] confirmed plans is within the Court's § 105(a) authority. Ordering disgorgement of monies collected in violation of a Bankruptcy Rule and a confirmed chapter 13 plan does not create substantive rights not found in the Code or contravene existing Code provisions. Rather, ordering disgorgement of monies collected in violation of a Bankruptcy Rule . . . is a necessary action to enforce and implement court orders and rules. Such remedial measures are explicitly authorized by § 105(a).

*In re Padilla*, 379 B.R. 643, 667 (Bankr. S.D. Tex. 2007); *see also In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1063 (5th Cir. 1997) (observing that substantive rights conferred by the Bankruptcy Code are "often enforced by a motion for contempt, but also enforceable through a declaratory judgment action") (citation omitted); *Placid Ref. Co. v. Terrebone Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997) ("The language of [§ 105] is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court

can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code.").

### G.     Fee-splitting in bankruptcy court and potential criminal liability

Congress takes fee-splitting seriously.  The Borah Act, 18 U.S.C. § 155, makes fee-splitting in bankruptcy proceedings a criminal act.  Section 155 provides, in relevant part:

> Whoever, being a party in interest, whether as a debtor, creditor, receiver, trustee or representative of any of them, or attorney for any such party in interest . . . *knowingly and fraudulently enters into an agreement, express or implied, with another such party in interest or attorney for another such party in interest, for the purpose of fixing the fees or other compensation to be paid to any party in interest or to any attorney for any party in interest for services rendered in connection therewith, from the assets of the estate*, shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 155 (emphasis added).  Although prosecutions under the Borah Act are rare, it shares a common purpose with the Bankruptcy Code and ethics rules: to prevent trustees, creditors, and others from "playing fast and loose with other people's money in courts of bankruptcy."  *Lutheran Hospitals & Homes Soc. v. Duecy*, 422 F.2d 200, 207 (9th Cir. 1970).

The Texas Penal Code's prohibition against barratry also appears to apply in this case.  *See* Tex. Penal Code § 32.12(a)(3) (forbidding professionals from "pay[ing], giv[ing], or advanc[ing] . . . to a prospective client money . . . to obtain employment as a professional from the client); *Id.* § 32.12(a)(6) (forbidding any person from "accept[ing] . . . money . . . to solicit employment"); *cf.* Network Agreement, Compl. Ex. 1, at Saxon 0198 (in exchange for administrative fees, "Fidelity shall develop and implement marketing services to obtain clients for the Network [of attorneys like Mann & Stevens]").

13

These criminal prohibitions against fee-splitting reflect the same hostility to fee-splitting reflected in the bankruptcy laws, the state ethics rules, and the decisions enforcing them.  Indeed, it is this hostility to fee-splitting that leads Fidelity to characterize law firms like Mann & Stevens as "Client selected" in its filings in this case (Ex. A. to Dkt. 12) when its own Network Agreement states that "Fidelity may decide which default matters are to be referred to [Mann & Stevens]." Compl., Exh. 1, at Saxon 0191.  Fidelity's control over which law firms get business from Saxon and other mortgage servicers makes the Network Agreement a fee-splitting referral agreement that violates the Bankruptcy laws, the state ethics rules, and, in all likelihood, criminal prohibitions against fee-splitting.

## Conclusion

Fee-splitting in bankruptcy court occurs in a variety of forms, and courts apply both bankruptcy and ethics rules in policing fee-splitting.  Despite that variety, however, the Harrises have discovered no cases that permitted a fee-splitting referral agreement of any kind without advance disclosure to the court.  In every case in which a court discovered an undisclosed fee-splitting referral scheme, the court ordered disgorgement of all fees obtained by any party to the scheme or, at the least, of the portion of the fees shared with the undisclosed partner.

Here, the court is faced with the unusual situation of a creditor, not a debtor, using the debtor's estate to pay for Fidelity's referrals and operation of what would ordinarily be creditor overhead.  Fidelity's scheme is ingenious, but its lack of disclosure makes it illegal, unethical, and worthy of disgorgement.  It is precisely this remedy that the Harrises seek and that is appropriate in these circumstances.

                                      Respectfully submitted,

                                      WALKER AND PATTERSON P.C.

                                      By: */s/ Johnie J. Patterson, II*
                                            Johnie J. Patterson, II
                                            State Bar No. 15601700
                                            Attorney in Charge
                                            Michael G. Walker
                                            State Bar No. 20717580
                                            4815 Dacoma
                                            Houston, Texas 77092
                                            (713) 956-5577 (Telephone)
                                            (713) 956-5570 (Facsimile)
                                            mwalker@walkerandpatterson.com
                                            jjp@walkerandpatterson.com

OF COUNSEL:

| YETTER & WARDEN, L.L.P. | SIEGMYER, OSHMAN & BISSINGER LLP |
|---|---|
| By: */s/ R. Paul Yetter* | By: */s/David K. Bissinger* |
| R. Paul Yetter | David K. Bissinger |
| State Bar No. 22154200 | State Bar No. 00790311 |
| Gregory S. Coleman | S.D. Tex. No. 18150 |
| State Bar No. 00783855 | Gerald S. Siegmyer |
| Ryan P. Bates | State Bar No. 18343300 |
| State Bar No. 24055152 | S.D. Tex. No. 2779 |
| 221 West Sixth Street, Suite 750 | 2777 Allen Parkway, 10th Floor |
| Austin, Texas 78701 | Houston, Texas 77019 |
| (512) 533-0150 (Telephone) | (713) 524-8811 (Telephone) |
| (512) 533-0120 (Facsimile) | (713) 524-4102 (Facsimile) |
| pyetter@yetterwarden.com | dbissinger@bizlawhouston.com |
| gcoleman@yetterwarden.com | gsiegmyer@bizlawhouston.com |
| rbates@yetterwarden.com | |

                                        **Attorneys for Plaintiffs**

**<u>Certificate of Service</u>**

On May 6, 2008, my law firm emailed and faxed a true and correct copy of this document to the following:

Michael P. Cash
Joseph G. Epstein
WINSTEAD PC
1100 JP Morgan Chase Tower
600 Travis Street
Houston, Texas 77002
Email: mcash@winstead.com and jepstein@winstead.com
Facsimile: 713-650-2400

Mark S. Melodia
Kurt F. Gwynne
Barbara K. Hager
Thomas Levinson
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Email: mmelodia@reedsmith.com,
kgwynne@reedsmith.com, bhager@reedsmith.com
and tlevinson@reedsmith.com
Facsimile: 215-851-1420

*/s/ David K. Bissinger*
David K. Bissinger