UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| EARNEST J HARRIS, *ET AL.*, § <br>     PLAINTIFFS, § <br> *VERSUS* § <br> § <br> FIDELITY NATIONAL INFORMATION, § <br> SERVICES INC., § <br> § <br>     DEFENDANT § | Civil Action 4:08−cv−01243 |

**Fidelity's Response to Harrises' Brief Regarding Fee-Splitting In Bankruptcy Court**

Fidelity National Information Services, Inc. responds to the Harrises' Brief as follows:

**1.    Introduction**

The disclosure requirements of Bankruptcy Rule 2016(a) are inapplicable. Fidelity is not a "creditor" of the bankruptcy estate, has no claim against the Harrises and did not seek or receive compensation from their bankruptcy "estate." Fidelity provided its proprietary technology and associated services to Mann & Stevens in exchange for flat fees, negotiated and agreed upon years in advance of the filing of the Harris' bankruptcy petition. Fidelity did not share in any legal fees paid by Saxon. Fidelity is not a law firm and does not provide legal services. Fidelity's administrative service fees are not proportionate to, a percentage of, or otherwise contingent upon the legal fees paid by a mortgage servicer.

**2.    Facts**

Fidelity's one page explanation of its business model requested by the Court,[1] the Network Agreement, and the indisputable facts set forth below demonstrate that the $150 fee paid to Fidelity did not constitute fee-splitting or involve payment of compensation from the Harrises' estate:

---

[1] Plaintiffs filed a dueling, but inaccurate, explanation of Fidelity's business. The explanation, which was not invited by the Court's order, misstates the program and should not be considered for any purpose.

1. Fidelity provided Mann & Stevens use of Fidelity's proprietary technology and associated non-legal administrative support services. See ¶¶ A-EE of § 2 of Exhibit A to the network agreement (Bates Saxon 0198-0199).

2. Mann & Stevens paid Fidelity fixed fees in exchange for the use of Fidelity's proprietary technology and associated services. See Exhibit B to the network agreement, § V.2(b) (Bates Saxon 0201).

3. Fidelity's invoices to Mann & Stevens are "due and payable within thirty (30) days of receipt by the Firm" regardless of whether Saxon ever pays Mann & Stevens' legal fees. See network agreement, § 5, p. 2 (Bates Saxon 0192).

4. Fidelity's administrative service fees are not in proportion to, a percentage of, or otherwise contingent upon the amount or collection of Mann & Stevens' legal fees.

5. No causal relationship exists between the legal fees earned by Mann & Stevens and the administrative services fee earned by Fidelity. Fidelity earns a flat fee only when it provides administrative services. See Exhibit B to network agreement.

6. Fidelity's right to payment is independent from (a) the Harrises' obligation to make any payment to Saxon and (b) Saxon's obligation to pay Mann & Stevens' legal fees.

7. Mann & Stevens did not pay any referral fees to Fidelity.

8. Fidelity is not a creditor of the bankruptcy estate, has no claim against the Harrises and received no compensation from them or their bankruptcy estate. See Opinion Dated April 4, 2008, Bankruptcy Adv. No. 08-03014, Docket Item 41, at 8-10 (Fidelity has no right to payment from, and is not a creditor of, the Harrises' estate).

9. Fidelity's clients select their counsel. Fidelity's proprietary system is programmed to electronically distribute matters to counsel (including Mann & Stevens) designated by Saxon at the appropriate time.

10. Mann & Stevens was engaged by Saxon solely because of the Harrises' admitted defaults in their mortgage payments to Saxon. See Agreed Order dated May 19, 2004 (Bankr. No. 03-44826; Docket Item 41).

11. Fidelity did not control Mann & Stevens' provision of legal services. See defaults services agreement, ¶ 2.10(j), p. 10 (Bates Saxon 0039) ("Fidelity shall manage all non-legal functions and services provided by local counsel hereunder. Fidelity shall not manage any legal functions or provide any legal services that are deemed to constitute the practice of law.").

**3.** **Discussion**

    **A.** **Bankruptcy Rule 2016(a) is inapplicable.[2]**

The disclosure requirements of Bankruptcy Rule 2016(a) are inapplicable to Fidelity. By its explicit language, Rule 2016(a) applies solely to an entity seeking or sharing compensation "*from the estate*." FED.R.BANK.P. 2016(a). Fidelity had no claim against the Harrises and had no standing to assert any claim against their bankruptcy estate. Fidelity has not violated Rule 2016(a) because Fidelity did not seek, receive, or share in compensation from the Harrises, or their bankruptcy "estate."

As a matter of law, once a debtor transfers funds to a third party, the funds are no longer property of the estate. In re Padilla, 379 B.R. 643, 664 (Bankr. S.D.Tex. 2007). In Padilla, Bankruptcy Judge Isgur held that the debtors' "payments were 'property of the estate'" when sent to the lenders. Id. at 664. When the lenders received those payments, however, and "deposited the payments into their own accounts, the funds were no longer property of the estate. The deposited funds were [the lenders'] property". Id. (citing Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 21 (1995).[3]

---

[2] The Harrises also claim that they have a private cause of action for an alleged violation of Rule 2016(a). Rule 2016(a), however, affords no private cause of action for alleged noncompliance. In re Yancey, 301 B.R. 861, 868 (Bankr. W.D. Tenn. 2003) ("No provision for a private remedy under Rule 2016 is found, and it would be extreme bootstrapping for the Court to say that § 105 creates a remedy for a rule violation."). The Harrises attempt to use Section 105(a) to create a cause of action that is not conferred by the Bankruptcy Code or Rule 2016(a). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law." In re Sadkin, 36 F.3d 473, 478 (5th Cir. 1994).

[3] Other courts agree with Judge Isgur's holding that funds are no longer "property of the estate" after a debtor pays those funds to a third party. E.g., In re Telfair, 224 B.R. 243, 248 (Bankr. S.D.Ga. 1998) ("once the payments were made, that is tendered to GE pursuant to the plan, the payments were no longer property of the estate. The payment becomes property of the creditor."), aff'd, Telfair v. First Union Mortg. Corp., 216 F.3d 1333 (11th Cir. 2000); In re Johnson, 2004 WL 180036, at *2 (Bankr. S.D.Ga. Jan. 16, 2004); In re Pegues, 266 B.R. 328, 336 (Bankr. D. Md. 2001); In re Freeman, No. 98-74082, 1999 WL 33587474, at *2 (Bankr. C.D.Ill. April 14, 1999); In re Gifaldi, 207 B.R. 54, 56 (Bankr. W.D.N.Y. 1997; In re Lennon, 65 B.R. 130, 135 (Bankr. N.D. Ga. 1986).

If funds are no longer property of the "estate" when transferred from the estate to a lender, then funds certainly cannot be property of the "estate" when transferred from the estate to a mortgage servicer (Saxon), from the mortgage servicer to its law firm (Mann & Stevens), and then from the law firm to its vendor (Fidelity).  Even more clearly, as in this case, monies paid by a law firm to its vendor, before any funds are paid by the debtor to the mortgage lender, could never be property of the bankruptcy estate.

In short, Rule 2016 is inapplicable on its face.  Fidelity was paid by Mann & Stevens for services provided by Fidelity to the law firm.  Fidelity did not seek, had no standing to seek and did not receive any compensation "from the estate."

**B.     The Harrises' reliance upon Bankruptcy Code Section 504, ethical rules and criminal and civil statutes is misplaced.**

**(1)     Section 504 of the Bankruptcy Code is inapplicable.**

Section 504(a) of Bankruptcy Code regulates fee splitting.  Section 504(a) applies only to lawyers and other professionals receiving legal fees pursuant to section 503(b)(2) [estate employed professionals] and 503(b)(4) [substantial contribution claims].  Neither Fidelity, Mann & Stevens nor Saxon received fees pursuant to sections 503(b)(2) and (b)(4).[4]

**(2)     Ethical rules governing professional conduct are not applicable.**

Ethical rules applicable to lawyers are irrelevant to an inquiry into an alleged violation of Rule 2016(a) by a non-lawyer.  Rule 5.04(a) of the Texas Disciplinary Rules of Professional Conduct provides, "A *lawyer or law firm* shall not share or promise to share legal fees with a non-lawyer . . ."  TEX. DISCIPLINARY R. PROF'L CONDUCT 5.04(a) (emphasis added).  Fidelity is not a law firm.

---

[4] See Harrises' brief in opposition to Fidelity's motion to dismiss at 12 (Bankr. Adv. No. 08-03014; Docket Item 34) (Section 504 is irrelevant, and "the Complaint makes no § 504 allegations at all."); see also In re Warner, 141 B.R. 762, 766 (M.D.Fla. 1992) (Section 504 is inapplicable to non-attorneys).

### (3) The criminal statutes are inapplicable.

The Harrises attempt to disparage Fidelity by alluding to bankruptcy crimes under 18 U.S.C. § 155 and violations of Texas Penal Code prohibitions against barratry. The Harrises do not assert claims under these criminal statutes, but simply reference them to sensationalize their alleged cause of action. These provisions do not apply and merit no response.

### C. No case supports the Harrises' fee-splitting allegation.

The Harrises do not and cannot cite a single case holding that a flat fee paid by a law firm to one of its service providers constitutes prohibited fee-splitting.[5]

### (1) Zuniga and Soulisak are inapposite.

The Harrises cite In re Zuniga, 332 B.R. 760 (Bankr. S.D. Tex. 2005) and In re Soulisak, 227 B.R. 77 (Bankr. E.D. Va. 1998), in support of their claim of fee splitting. Those cases have nothing in common with the present case.

In Soulisak, the court held that a disbarred lawyer acting as the debtor's co-counsel engaged in the unauthorized practice of law. Id. at 81. As a remedy, the court ordered disgorgement of the legal fees split between co-counsel pursuant to Section 329 of the Bankruptcy Code. In this case, Fidelity is not a law firm, did not participate in the representation of Saxon and did not receive any legal fees. Therefore, the ethical and statutory prohibitions against fee-splitting among lawyers are inapplicable.

Zuniga is similarly inapposite. There, a debtor sought the advice of a credit repair organization that suggested that she file for bankruptcy and referred her to a law firm related to the organization. The law firm, unlicensed in Texas, referred the debtor to another firm with whom they shared legal fees. The court took issue with the law firms' fee-sharing arrangement

---

[5] In fact, all cases cited by the Harrises involved disgorgement claims against *attorneys* for fee-splitting. Here, there was no fee-splitting.

and reprimanded the firm for its failure to disclose information about their related credit repair organization.  Id. at 773.

### (2)  Futuronics and Evangeline Refining are inapposite.

The Harrises cite In re Futuronics, 655 F.2d 463 (2d Cir. 1981) and In re Evangeline Refining Co., 890 F.2d 1312 (5th Cir. 1989), for the proposition that disgorgement is the proper sanction for fee splitting.  The cases are factually and legally distinguishable from this case.

In Futuronics, debtor's lead bankruptcy counsel filed an application to retain special counsel.  The application was originally denied by the court because of an apparent fee-splitting arrangement between special counsel and the debtor's counsel.  One month later, lead counsel and the proposed special counsel "deviously deleted the unseemly portions from the application, covertly agreed to maintain the [fee-splitting] agreement in any event, and resubmitted their proposed order devoid of any reference to their prior attempt or their continued illicit contract."  655 F.2d at 470-71.  While the sanction of total disgorgement is neither remarkable nor surprising under the facts in Futuronics, those facts bear no resemblance to the Harris case.

In addition, Evangeline Refining and other circuit courts of appeals decisions cited by the Harrises, are not fee-splitting decisions.  For example, Evangeline Refining involved a chapter 11 trustee's "consistent and systematic overbilling, and unrealistic hours charged."  890 F.2d at 1325.  Those cases have no application to the facts of this case.

### (3)  Holmes is inapposite.

The Harrises also misplace reliance upon In re Holmes, 304 B.R. 292 (Bankr. N.D. Miss. 2004).  In Holmes, a debtor's lawyer routinely incented his non-attorney staff with $5 bonuses for stimulating events to generate legal fees.  Id. at 296.  As such, the court determined that the non-attorney staff impermissibly received a share of fees collected by the debtor's lawyer in violation of ethical rules applicable to lawyers.

-7-

Like all other cases cited by the Harrises, the <u>Holmes</u> case involved fees paid by an estate directly to a lawyer or trustee *retained by the debtor's estate* (emphasis added). In addition, the ethical rules upon which many of the court's based their ruling are only applicable to lawyers. Therefore, the <u>Holmes</u> decision also has no application to Fidelity, a non-lawyer that provided administrative services to a creditor's law firm.

**4.      Conclusion**

The law cited by the Plaintiffs is inapplicable in this case. Fidelity did not engage in fee-sharing with Mann & Stevens. It neither sought nor received any compensation from the Harrises' estate. Fidelity provided Mann & Stevens with non-legal, administrative support services and the use of Fidelity's proprietary technology. Fidelity's right to payment for its administrative services is independent from (a) the Harrises' obligation to make any payment to Saxon and (b) Saxon's obligation to pay Mann & Stevens' legal fees. Finally, Fidelity is not a law firm, and is not subject to the statutes or rules discussed in the Harrises' brief.

Respectfully submitted,

WINSTEAD PC

By:   */s/ Joseph G. Epstein*
     Michael P. Cash
     Texas Bar No. 03965500
     S.D. Texas No. 5472
     Attorney-In-Charge
     Joseph G. Epstein
     Texas Bar No. 06639320
     S.D. Texas No. 11733
     1100 JPMorgan Chase Tower
     600 Travis Street
     Houston, Texas 77002
     Telephone: 713-650-8400
     Facsimile: 713-650-2400

     -and-

     Of Counsel:

     Mark S. Melodia
     Kurt F. Gwynne
     Barbara K. Hager
     J. Cory Falgowski
     REED SMITH LLP
     2500 One Liberty Place
     1650 Market Street
     Philadelphia, PA 19103
     215-851-8100
     215-851-1420 (facsimile)

     Counsel for Fidelity National
     Information Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008, a true and correct copy of the foregoing instrument has been served on all parties entitled to receive notice via the Court's Electronic Filing System and by United States Mail, postage prepaid and properly addressed to the persons or parties listed below.

          /s/ Joseph G. Epstein
          Joseph G. Epstein

Johnnie Patterson
Michael Walker
Miriam Goott
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, Texas 77208

David K. Bissinger
Gerald S. Siegmyer
SIEGMYER, OSHMAN & BISSINGER LLP
2777 Allen Parkway, 10th Floor
Houston, Texas 77019

Paul Yetter
Gregory S. Coleman
Ryan P. Bates
YETTER & WARDEN, L.L.P.
221 West Sixth Street, Suite 750
Austin, Texas 78701