```
               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION


 ERNEST J. HARRIS, ET AL       *     08-CV-1243
                               *     Houston, Texas
 VS.                           *
                               *     July 17, 2008
 FIDELITY NATIONAL             *     3:50 p.m.
 INFORMATION SERVICES,         *
 INC., doing business as       *
 Fidelity National             *
 Foreclosure & Bankruptcy      *
 Solutions                     *
```

                        **CONFERENCE**

            **BEFORE THE HONORABLE LYNN N. HUGHES**
                **UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**

**FOR EARNEST J. HARRIS:**
**David Kent Bissinger**
SIEGMYER, OSHMAN, et al
Attorneys at Law
2777 Allen Parkway, Suite 1000
Houston, Texas 77019
713.524.8811


**Johnie J. Patterson, II and Miriam Goot**
Walker & Patterson, PC
Attorneys at Law
P O Box 61301
Houston, Texas 77208-1301
713.956.5577


**R. Paul Yetter**
Yetter & Wardin, LLP
Attorneys at Law
Two Houston Center
909 Fannin, Suite 3600
Houston, Texas 77010
713.632.8000

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

```
 1  David Kent Bissinger
    Siegmeyer, Oshman & Bissinger, LLP
 2  Attorneys at Law
    2777 Allen Parkway, Suite 1000
 3  Houston, Texas 77019

 4

 5

 6

 7  FOR DEFENDANT FIDELITY NATIONAL:
    Mike Cash and Joseph G. Epstein
 8  Winstead, PC
    Attorneys at Law
 9  1100 JPMorgan Chase Tower
    600 Travis
10  Houston, Texas 77002
    713.650.2740
11

12  FOR SAXON MORTGAGE:
    Berry D. Spears
13  FulBright & Jaworski, LLP
    512.474.5201
14  600 Congress Avenue, Suite 2400
    Austin, Texas 78701-2978
15

16

17  Court Reporter:
    Johnny C. Sanchez, RPR, RMR, CRR
18  515 Rusk, #8016
    Houston, Texas 77002
19  713.250.5581

20

21  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-assisted transcription.
22

23

24

25
```

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

1         THE COURT:  I don't reckon anybody wants to
2 announce a settlement?
3         MR. YETTER:  No, Your Honor, not at this point,
4 actually.
5         THE COURT:  Pull that microphone down.
6         MR. YETTER:  That is something that the parties
7 have been exploring, but we don't have anything to
8 announce, Your Honor.
9         THE COURT:  Well, are we making some progress?
10 I mean, I just as soon not work.
11         MR. YETTER:  And we appreciate that, Your
12 Honor.  We are making some progress.  At the last hearing
13 what the Court said is -- the Court ordered some exchange
14 of information and our initial concern was that the policy
15 and procedure manuals we got from Fidelity weren't what we
16 were expecting, were not consistent --
17         THE COURT:  I'm sorry about that.
18         MR. YETTER:  But what we got yesterday, Your
19 Honor, we got notice yesterday that they have another CD,
20 they gave us a list of the documents.  It looks fairly
21 significant, it looks closer, in fact, it looks much more
22 like what we were expecting, and we have made an agreement
23 between the two sides to visit on the --
24         [!EZ SPEAKER 04]:  On the 30th.
25         MR. YETTER:  -- on the 30th of July.

```
 1                MR. CASH:  No.
 2                MR. YETTER:  Maybe I understood what the
 3   agreement is.  But, basically, I think we're going to sit
 4   down on the 30th.
 5                MR. CASH:  We're going to see if we can nail
 6   down a protective order first, confidentiality, and a
 7   number of issues we'll have to deal with.
 8                THE COURT:  Why do we have to deal with that?
 9                MR. CASH:  Well, Your Honor, ours is a highly
10   competitive business, and these are internal, highly
11   confidential proprietary documents that we have given them
12   a list.
13                THE COURT:  The reason I'm late getting to
14   you-all, I had to beat on a bunch of patent lawyers to get
15   all that out of a fairly decent patent case.
16                MR. CASH:  We just had two new competitors
17   enter the market within the last 30 days, Your Honor.  And
18   so it's --
19                THE COURT:  Do a long order.  I'll do my long
20   order right now.
21                MR. CASH:  Okay.
22                THE COURT:  But, basically, the discovery in
23   this case will be used in the legitimate good faith
24   prosecution of defense of this case or I will kill whoever
25   doesn't.  This is not about press releases and other stuff
```

1  or embarrassing them to the advantage of their competitors.
2              MR. YETTER:  We understand.
3              MR. CASH:  There was a stronger sanction we
4  would have asked for, Your Honor, but --
5              THE COURT:  I've been dealing with it so long I
6  can probably do it just for the fun of it.
7              MR. YETTER:  So the Court's question was
8  already made prior to the answer is, we are making some
9  progress, and we think on the 30th we may make some more
10 progress with this these documents, Judge.
11             THE COURT:  All right.
12             MR. CASH:  As far as settlement, Judge, we
13 haven't discussed any type of a settlement of the lawsuit,
14 but are working towards each other on the exchange of
15 information.  I agree with that.
16             MR. YETTER:  I think the issue has been raised
17 with Saxon.
18             THE COURT:  Saxon?
19             MR. PATTERSON:  Well, with respect to the
20 Harrises' individual mortgage statement.  They are
21 delinquent with Saxon.  And Mr. Spears is here who
22 represents Saxon.  And we have talked about trying to get
23 the Harrises back on track with their ongoing mortgage
24 case.  This doesn't have really anything to do with the
25 bankruptcy case.

```
                1              THE COURT:  Yes, it does.
                2              MR. PATTERSON:  Well, with respect --
                3              THE COURT:  The mortgage is the largest debt,
                4   isn't it?
03:53:39PM      5              MR. PATTERSON:  With respect to --
                6              THE COURT:  I'm sorry.  That was a question
                7   Mr. Patterson, the Harrises largest debt is?
                8              MR. PATTERSON:  I would suspect that's true.  I
                9   don't know that off top of my head, but I would highly
03:53:52PM     10   suspect --
               11              THE COURT:  I would too.  So the mortgage being
               12   in arrears is a significant part of the bankruptcy case.
               13              MR. PATTERSON:  I guess we're parsing words.
               14   It is not part of their Chapter 13 plan.  The only thing in
03:54:07PM     15   their Chapter 13 plan is the payments will be made directly
               16   by the Harrises on their ongoing mortgage, so it's not
               17   flowing through their Chapter 13 plan or --
               18              THE COURT:  So why do they need a Chapter 13
               19   plan?
03:54:25PM     20              MR. PATTERSON:  Because there was arrearage on
               21   their house when they filed for bankruptcy.  An arrearage
               22   portion is being paid through their Chapter 13 plan.  They
               23   are very close to completing and receiving their discharge
               24   in their Chapter 13 case within months, but I didn't check
03:54:41PM     25   before today.
```

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

```
 1                THE COURT:  How much are the Harrises out
 2  because of this problem?
 3                MR. PATTERSON:  I'm sorry.  I don't understand.
 4                THE COURT:  Well, this quest is about the
 5  Harrises being cheated out of an attorney's fee.
 6                MR. PATTERSON:  Less than a thousand dollars
 7  with respect -- with respect to Fidelity and the
 8  undisclosed.  I believe that's right.
 9                     My comments were Mr. Spears and I have
10  been talking about getting them back on track with their
11  ongoing mortgage so that when they receive their discharge
12  in their Chapter 13 plan, they can be not trying to come
13  back or have another problem to deal with once they're
14  complete with their discharge.
15                MR. CASH:  Your Honor, just for point
16  clarification, what we were sued for is the difference
17  between what they say was a reasonable attorney's fee.
18                THE COURT:  I understand.  It's a seven-dollar
19  case.
20                MR. CASH:  No, it's a $175 case.  That's the
21  difference.
22                THE COURT:  I've added service charges and late
23  fees to it.  So why don't you give them $175?
24                MR. CASH:  I would give them $175 out of my
25  wallet right now if it would resolve the case.  I will pay
```

```
 1  it.
 2              THE COURT:  That's the controversy.
 3              MR. CASH:  With no admission of liability.
 4              THE COURT:  I understand.
 5              MR. YETTER:  Your Honor, we're going to do the
 6  right thing for the Harrises, so I appreciate what counsel
 7  just offered, and this may lead to some discussions about
 8  this case, Your Honor.
 9              THE COURT:  I bet he'd round it up to 250.
10              MR. YETTER:  350?  Your Honor, maybe you can
11  negotiate.
12              MR. CASH:  I'm not sure about that.
13              THE COURT:  Mr. Yetter takes Visa, Master card
14  American Express and Discover.
15              MR. YETTER:  Cashier's checks as well, Your
16  Honor.  I am serious.  We will certainly will take it under
17  consideration.
18              THE COURT:  I understand the global complaint,
19  but I'm not in the public policy business.  I'm in the
20  discrete resolution of the resolution of discrete disputes
21  between individuals.  And if the Harrises have no claim
22  outside of that modest amount of money, and they want to be
23  free --
24              MR. YETTER:  We understand that, Your Honor.
25              THE COURT:  -- and they've got -- they're
```

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

1 working with the actual lender whom they owe, that ought to
2 do it.  I'm perfectly willing to decide the case, but there
3 seems to be modest futility to doing that, unless we want
4 to make it global.  And to be global, we have to have some
5 individual with a viable factual complaint.
6           MR. YETTER:  We do, Your Honor.  And that
7 individual has to be represented.  It has to meet -- we
8 understand that, and that is why we are -- this is
9 something that we would certainly give reasonable
10 consideration to counsel with our clients about.
11           THE COURT:  This may be a cruel imposition.
12 Will you at least talk to Mr. Yetter next week?
13           MR. CASH:  Absolutely, Your Honor.  We have
14 already arranged.  We have -- no, not next week.
15           THE COURT:  Whenever, the 30th.
16           MR. CASH:  I've got to take the Louisiana bar
17 next week.
18           THE COURT:  I have a wonderful staff who tell
19 me what day it is and usually what day I can do things.
20           MR. SPEARS:  Your Honor, if I may?  I
21 apologize.  For the record my name is Berry Spears and I
22 represent Saxon Mortgage.  And I apologize we're not a
23 party and I didn't --
24           THE COURT:  We have a lot of nonparties.
25           MR. SPEARS:  But I did want to the Court to be

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

```
 1  aware, Mr. Patterson hasn't made inquiry as it relates to
 2  whether there could be something worked out.  I think we're
 3  a long way, frankly.
 4              THE COURT:  How much is the arrearage?
 5              MR. SPEARS:  The arrearage is about $20,000.
 6              THE COURT:  How long have the Harrises not paid
 7  their mortgage?
 8              MR. SPEARS:  No payments have been made since
 9  January of 2007.
10              THE COURT:  How long did they make payments
11  before then?
12              MR. SPEARS:  Well, the note was originated in
13  2001.  Between 2001 and January of 2007, there were
14  probably a dozen defaults during that period of time.  I
15  don't have that, you know, at my fingers tips, but I'm
16  certain the records would reflect.
17              THE COURT:  If you would furnish it to
18  counsel --
19              MR. SPEARS:  I've done so, Your Honor.
20              THE COURT:  -- so that they know how many times
21  they missed.
22              MR. SPEARS:  They do indeed.  And I have the
23  pay record.  I can count them up.  I think it's 12 or 13
24  times, I believe, during that period of time.
25              THE COURT:  And are you willing to talk to
```

              1  Mr. Yetter?
              2              MR. SPEARS:  Your Honor, we're willing to
              3  consider any proposal that they'd be -- that they'd make,
              4  and we've always been willing to consider that.  You know,
 03:59:55PM   5  as I told Mr. Patterson, the stumbling block here is that
              6  the default is longstanding and, frankly, has been
              7  consistent.  But we're willing to consider any proposal.
              8              THE COURT:  So they've made about four years or
              9  so of payments?
 04:00:14PM  10              MR. SPEARS:  That's probably about right.
             11              THE COURT:  Out of eight.
             12              MR. SPEARS:  That's right.
             13              THE COURT:  In round numbers.
             14              MR. SPEARS:  Yes, sir.  By the way Mr. Epstein
 04:00:25PM  15  tells me that the pay history, he's attached as his Exhibit
             16  Number 26 in the binder, which I believe the Court has.
             17              MR. EPSTEIN:  It's 29.  There's an agreed set
             18  of exhibits that the Court asked us to settle up on.  We
             19  did get some new documents yesterday from Saxon, and we've
 04:00:49PM  20  agreed with Mr. Bissinger to allow them a few days to take
             21  a look at them, to go through the Saxon documents.
             22              THE COURT:  Did you send a binder, or did you
             23  just file them?
             24              MR. EPSTEIN:  We filed the list, Your Honor.
 04:01:02PM  25  We didn't want to clutter the Court's file with all the

1 documents.

2 THE COURT: Did -- but at some point you may
3 wish me actually to read them. And what I would suggest,
4 since you've agreed to them, you both have copies, that we
5 not file them even then, and then I'll have my copy, and if
6 anything becomes critical, we can file that document. I
7 have signed the confidentiality order, there are copies for
8 the principal counsel. They'll be online late this
9 afternoon or the morning. So if you want to see what it
10 says, I'm sorry I didn't make copies for everybody. And if
11 there's some defect in that, Mr. Cash, let me know and I'll
12 deny it.

13 MR. CASH: Thank you, Your Honor.

14 THE COURT: I think -- Mr. Yetter, is there
15 anything else you want to do today? I think if you're
16 going to talk, I would prefer not to do anything on the
17 risk of limiting the potential success of the talks, but if
18 you-all don't work it out by the 5th of August, then I
19 think it's time to crank up and maybe have some dispositive
20 motions.

21 MR. YETTER: I think that we are at a stage now
22 where we will learn more by the 5th of August, Your Honor,
23 and we can report back to the Court, and then the Court
24 will do what you think is appropriate in terms of --

25 THE COURT: On the 5th, if you will just

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

1  jointly tell me what you think ought to be done, and if
2  there's a strong divergence, then list each of your
3  proposals.  But I don't want you to brief the case.  I just
4  want to know Harris thinks we ought to do X, and Fidelity
5  thinks we ought to do Y.  And if I -- do I understand
6  correctly that Saxon is the actual lender?
7          MR. YETTER:  Saxon.
8          MR. PATTERSON:  I believe Saxon servicer only
9  -- Mr. Spears I think discloses the owners -- well, I'll
10 let him address the Court.
11         THE COURT:  All right.  In the chart, there is
12 a lender somewhere, and Saxon is working for the lender as
13 a service.
14         MR. SPEARS:  That's correct, Your Honor.  Saxon
15 Mortgage is the servicer for a securitized trust.
16         THE COURT:  I'm going to call them the bank,
17 the actual lender.
18         MR. SPEARS:  Yes, Your Honor.
19         THE COURT:  Okay.  And so, the chart is right,
20 I didn't put their names on it.  I didn't put the names on
21 it to be clear.  Anything else we can usefully do?
22         MR. YETTER:  That's all for the plaintiffs,
23 Your Honor.
24         MR. CASH:  Not for the defense.  Thank you.
25         THE COURT:  Do you want to quickly read that

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*

1  order in case you really have something that's unworkable?
2            MR. CASH:  If I may respond, Your Honor?  I
3  think it looks fine, Your Honor.  I think I've read this
4  order before, so it looks familiar.
04:05:20PM  5            THE COURT:  I like to think I'm dependable, I
6  may have sunk to predictable, and my wife says I'm not only
7  dull but I bring dullness out in other people.  All right,
8  Mr. Yetter, is the order all right?
9            MR. YETTER:  I have had many orders from the
04:05:37PM 10  Court.  I'm sure it's fine, Judge.
11            THE COURT:  And if something comes up that
12  doesn't fit, holler and we'll adjust it.  Okay?
13            MR. CASH:  Yes, sir.
14            THE COURT:  Thank you, counsel.  Sorry to keep
04:05:46PM 15  you waiting.
16            **(A recess was had 4:05 p.m.)**
    **COURT REPORTER'S CERTIFICATE**
17       I, Johnny C. Sanchez, certify that the foregoing is a
correct transcript from the record of proceedings in the
18  above-entitled matter.
19                      /S/ JOHNNY C. SANCHEZ, RMR, CRR
20
21                      _____
                        Johnny C. Sanchez, RMR, CRR
                        Official Court Reporter
22                      515 Rusk, Suite 8016
                        Houston, Texas 77002
23                      713.250.5581
                        jcscourtreporter@aol.com
24
25

*Johnny C. Sanchez, RMR, CRR - jcscourtreporter@aol.com*